IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

VIRGINIA A. CUE,            )
                                )
          Plaintiff,        )
                                )
                                )
v.                          )       CIV-06-300-C
                                )
JO ANNE B. BARNHART,     )
 Commissioner of Social Security  )
  Administration,          )
                                )
         Defendant.     )

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her concurrent applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSIB") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff filed her DIB application on August 5, 2003, alleging that she became disabled on February 21, 2003. (TR 57-59, 68). Plaintiff filed her SSIB application on July

1

28, 2003 (protective filing date). (TR 182-185).  Plaintiff described previous work as a fast food worker and having a tenth grade education. (TR 69, 74).  Plaintiff alleged she was unable to work due to "legs and back trouble," "dizzy spells," back, leg and foot pain, swelling in her legs, indigestion, constant fatigue and weakness, "choking spells," inadequate hand and foot circulation, and a learning disability. (TR 68, 87, 89, 91, 93).  Plaintiff's applications were administratively denied. (TR 30, 31, 186, 190).  At Plaintiff's request, a hearing *de novo* was conducted on May 24, 2005, before Administrative Law Judge McClean ("ALJ") at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. (TR 201-230).

Following the hearing, the ALJ issued a decision in which the ALJ found Plaintiff has a severe impairment due to borderline intellectual functioning although the impairment is not disabling *per se* under the agency's Listing of Impairments. (TR 22-28).  Despite this impairment, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform work at the medium exertional level limited to work involving understanding, remembering, and carrying out simple to detailed, but not complex, job instructions and limited to work not involving customer service. (TR 26).  Relying on the VE's testimony, the ALJ found that Plaintiff's RFC does not preclude her from performing her past relevant work as a fast food worker and therefore she is not disabled within the meaning of the Social Security Act. (TR 26-28).  The agency's Appeals Council declined Plaintiff's request to review the administrative decision. (TR 10-12).  Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. <u>Standard of Review</u>

Judicial review of this Complaint is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. <u>Emory v. Sullivan</u>, 936 F.2d 1092, 1093 (10th Cir. 1991). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." <u>Musgrave v. Sullivan</u>, 966 F.2d 1371, 1374 (10th Cir. 1992). Because "all the ALJ's required findings must be supported by substantial evidence," <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." <u>Clifton v. Chater</u>, 79 F.3d 1007, 1010 (10th Cir. 1996). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. <u>Hamilton v. Secretary of Health & Human Servs.</u>, 961 F.2d 1495, 1498 (10th Cir. 1992). However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). The

3

Commissioner applies a five-step inquiry to determine whether a claimant is disabled.  See

20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f) (2006); see also Grogan v. Barnhart, 399 F.3d

1257, 1261 (10th Cir. 2005)(describing five steps in detail).  Where the plaintiff makes a

*prima facie* showing that she has one or more severe impairments and can no longer engage

in prior work activity, "the burden of proof shifts to the Commissioner at step five to show

that the claimant retains sufficient residual functional capacity (RFC) to perform work in the

national economy, given [the claimant's] age, education, and work experience." Grogan, 399

F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

In her brief, Plaintiff contends that there is not substantial evidence to support the

ALJ's finding at step three that she is not disabled *per se*.  Plaintiff also asserts that the ALJ

erred in rejecting the exertional limitations placed on Plaintiff by her treating physicians, Dr.

Moody and Dr. Goddard, that the ALJ's RFC finding is not supported by substantial

evidence in the record, and that the ALJ erred in failing to include all of Plaintiff's limitations

in posing hypothetical questioning to the VE.  The Commissioner responds that no error

occurred with respect to the ALJ's evaluation of the evidence and that there is substantial

evidence in the record to support the ALJ's findings and conclusion.

III. Steps Two and Three

At step two, the ALJ must determine "whether the claimant has a medically severe

impairment or combination of impairments." Bowen v. Yuckert, 482 U.S. 137, 140-141

(1987).  This determination is governed by the agency's "severity regulation[s]" at 20 C.F.R.

§§ 404.1520(c), 416.920(c) (2006).  Pursuant to these regulations, the claimant must make

a "threshold showing that his [or her] medically determinable impairment or combination of impairments significantly limits his [or her] ability to do basic work activities." <u>Williams v. Bowen</u>, 844 F.2d 748, 750-751 (10th Cir. 1988).   Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. §§ 404.1521(b), 416.921(b), including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856, at 3.   This determination is based on medical factors alone. <u>Williams</u>, 844 F.2d at 750.   At the third step of the requisite sequential evaluation procedure, the ALJ "determines whether the impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity," pursuant to 20 C.F.R. §§ 404.1520(d), 416.920(d) (2006). <u>Yuckert</u>, 482 U.S. at 141.   "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." <u>Id.</u>

Plaintiff contends that there is not substantial evidence to support the ALJ's finding at step three that she is not disabled *per se* under the agency's Listing of Impairments for mental retardation.   Plaintiff contends that her mental impairment satisfies Listing 12.05(C). This listing requires medical evidence of "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function...." 20 C.F.R. pt. 404, subpt. P, app. 1, §

12.05(C).  The ALJ's decision reflects the ALJ's consideration of Listing 12.05(D) in connection with the objective medical evidence of Plaintiff's borderline intellectual functioning.   This listing requires objective medical evidence of "[a] valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following [functional limitations]," including "[m]arked restriction of activities of daily living," "[m]arked difficulties in maintaining social functioning," "[m]arked difficulties in maintaining concentration, persistence, or pace," or "[r]epeated episodes of decompensation, each of extended duration." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(D).

Plaintiff asserts that the ALJ erred by failing to assess the severity of Plaintiff's mental impairment under Listing 12.05(C), instead of Listing 12.05(D).   Plaintiff is actually asserting that the ALJ erred at step two in failing to find that Plaintiff has a severe physical impairment in addition to her severe mental impairment.  See Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997)(adopting First and Eleventh Circuits' view that "the § 12.05C limitation is significant if the claimant suffers from a severe physical or other mental impairment, as defined at step two of the disability analysis, apart from the decreased intellectual function").   However, Plaintiff refers only to notations in the medical record that Plaintiff has "pain," "fatigue," or "myalgia." Plaintiff's Brief, at 11.  Plaintiff does not point to objective medical findings of persistent functional limitations consistent with a severe impairment due to pain. The ALJ's decision reflects the ALJ's review of the medical record and finding that Plaintiff's "myalgias of the low back, legs and feet and dizziness are not severe." (TR 26).  The record reflects that Plaintiff has infrequently complained to physicians

6

of pain in various parts of her body, including her back, legs, feet, and hands.  However, the ALJ reviewed the medical record and accurately described the objective findings of physicians with respect to Plaintiff's complaints of pain. (TR 24-25).

There is no medical evidence that Plaintiff has pain significantly limiting her ability to work.  A claimant's statements alone are insufficient to establish the existence of an impairment. 20 C.F.R. §§ 404.1528(a), 416.928(a)(2006).   Plaintiff reported to the consultative examiner that she had experienced low back pain "off and on" for years but she provided no history of any injury. (TR 134).  Plaintiff was nonspecific about the location of her alleged pain in her legs and feet and described her pain as being "everywhere." (TR 134). The objective findings of the consultative examiner with respect to the physical examination of Plaintiff did not reflect medical evidence of an impairment due to pain significantly limiting Plaintiff's ability to work. (TR 135-140).  The remainder of the scant medical record also fails to provide medical evidence of an impairment due to pain that would satisfy Plaintiff's burden at step two.  No error occurred in this respect at the second or third steps of the ALJ's evaluation.

IV. Treating Physicians' Opinions and RFC Finding

Plaintiff contends (in Proposition III and Proposition IV) that the ALJ erred in rejecting the exertional limitations imposed on Plaintiff by her treating physicians, Dr. Moody and Dr. Goddard.  Plaintiff asserts in Propositions I and II that in light of these limitations imposed by Dr. Moody and Dr. Goddard the ALJ's RFC finding and ultimate conclusion that Plaintiff is capable of performing her previous job are not supported by

substantial evidence.  At her administrative hearing, Plaintiff testified that she was referred by the Oklahoma Department of Human Services ("DHS") to her family doctor at that time, Dr. Moody, to determine if she could participate in vocational training courses and that Dr. Moody completed a form which she returned to DHS. (TR 217). Records of Dr. Goddard's treatment of Plaintiff on three occasions in September, November, and December 2005 were submitted with Plaintiff's request for review of the ALJ's decision by the Appeals Council.

The medical record reflects that Plaintiff sought treatment from Dr. James Moody in January 2004 for leg and back pain, swelling in her feet, and fatigue, all of which she alleged had been occurring for one year. (TR 165).  Dr. Moody's brief office note reflects that Plaintiff exhibited "[f]ullness in the strap [sic] muscles in the neck and doral [sic] area more between the scapula areas" and that she was "[h]aving some swelling in the legs with dependent type edema," although the note does not indicate whether this was an objective finding or a recitation of Plaintiff's subjective complaint. (TR 165).  Dr. Moody noted he prescribed a muscle relaxant medication and referred Plaintiff for ultrasound testing of the right leg venous system. (TR 165).  The record shows that ultrasound testing of Plaintiff's right leg was conducted on January 16, 2004, and that the testing showed no evidence of deep venous thrombosis or any venous insufficiency. (TR 163).  On May 6, 2004, Dr. Moody completed and signed a form for DHS designated "Physician's Statement of Ability." (TR 161).  On this form, the physician checked boxes and made cryptic notations indicating Plaintiff was not able to participate "at this time" in various job training programs. (TR 161). The only reason given by Dr. Moody for this assessment is the notation "Pt [sic] to see

8

orthopedic specialist." (TR 161-162).  In the only other record of treatment of Plaintiff by

Dr. Moody, the physician notes Plaintiff was seen by Dr. Moody in May 2004, that she

complained of continuing "myalgia" and "decreased strength in hands," that the physician

advised her to continue the muscle relaxant medication which she stated "did help" her, and

that she was advised to see an orthopaedic surgeon. (TR 160).

Under the agency's regulations, "the opinion of a treating physician concerning the

nature and extent of a claimant's disability is entitled to 'controlling weight' when it is 'well-

supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not

inconsistent with the other substantial evidence in [the claimant's] case record.'" Doyal v.

Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  A treating physician's opinion may be

disregarded, however, if it is not supported by the physician's records or is inconsistent with

other medical evidence.  Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027,

1029 (10th Cir. 1994).  See Kemp v. Bowen, 816 F.2d 1469, 1476 (10th Cir. 1987)("The

treating physician rule governs the weight to be accorded the medical opinion of the

physician who treated the claimant ... relative to other medical evidence before the factfinder,

including opinions of other physicians.")(quotation omitted).  However, "[i]f the ALJ rejects

the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins

v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003)(quotations omitted).

In the ALJ's decision, the ALJ summarized the medical evidence in the record, and

the decision reflects that the ALJ reviewed the medical record, including the office notes of

Dr. Moody.  Assuming that Dr. Moody qualified as a treating physician, Plaintiff had only

seen the physician on one occasion when Dr. Moody completed the DHS form.  Moreover, the physician's statements on the DHS form were vague and cryptic.  Even though the DHS form asked the physician to provide "[r]estrictions" relevant to Plaintiff's ability to participate in vocational programs offered by the agency, Dr. Moody merely stated that Plaintiff was not able to participate in the vocational programs "at this time" and that she had been advised to see an orthopedic specialist.  (TR 161-162).  Plaintiff concedes that Dr. Moody did not provide specific restrictions or accommodations despite the form's request for this information. Dr. Moody did not set forth objective medical findings of medical impairments or work-related restrictions, and the ALJ therefore was not required to evaluate the statements on the DHS form as objective evidence of a medical impairment or to give the physician's statements on the DHS form any weight in determining Plaintiff's functional limitations.

Plaintiff contends that error occurred in the Appeals Council's failure to discuss the exertional limitations placed on Plaintiff by another treating physician, Dr. Goddard. Plaintiff's Brief, at 8.  The record shows that after the ALJ's decision was entered in August 2005, Plaintiff sought treatment from Dr. Goddard in September 2005.  (TR 196).  The record contains notes of treatment of Plaintiff by Dr. Goddard on only two other occasions in November 2005 and December 2005. (TR 194, 195).  The Appeals Council was not required to consider these records of treatment occurring after the date of the ALJ's decision. 20 C.F.R. §§ 404.970(b), 416.1570(b) (2006).  Nevertheless, the Appeals Council indicated that Dr. Goddard's treatment records were received as part of the record and considered with

respect to Plaintiff's request for administrative review of the ALJ's decision. (TR 10, 13).

Thus, Dr. Goddard's office notes of treatment of Plaintiff are part of the medical record.

Dr. Goddard's office notes reflect that he saw Plaintiff in September 2005 and prescribed anti-inflammatory medication for her history of chronic back pain and plantar fasciitis. (TR 196). Although the office note contains a cryptic notation of "no lifting [over] 10 #" and "no standing on feet [over] 1 hour," there is nothing in the record indicating that this was a permanent or long-term work-related restriction placed on Plaintiff by the physician. (TR 196). Dr. Goddard had only examined Plaintiff one time when these functional limitations were noted, and the remainder of the office note is illegible with respect to any objective findings. Thus, the functional limitations noted by Dr. Goddard are not supported by objective medical findings in the record, and the functional limitations are not consistent with the objective findings made by the consultative physical examiner. Dr. Goddard's note indicates only that Plaintiff's chronic low back pain was partially due to "poor conditioning factors" and that the physician prescribed conservative treatment for her chronic back pain and plantar fasciitis of nonsteroidal anti-inflammatory medication. (TR 196).

The next office note of treatment of Plaintiff by Dr. Goddard indicates Plaintiff was seen on November 29, 2005, that she was exercising, that the physician advised Plaintiff to obtain spinal x-rays with respect to her complaint of chronic back pain, and that her extremities exhibited no abnormalities. (TR 195). Dr. Goddard also noted he prescribed medications for bronchitis and hormone deficiency. (TR 195). In the third and final note of

treatment of Plaintiff by Dr. Goddard, the note indicates Plaintiff was seen on December 19, 2005, and that she requested "a note for return to school" and a referral for a sleep study due to snoring. (TR 194).  The physician noted that Plaintiff was advised to obtain the results of spinal x-rays apparently conducted at another medical clinic in relation to her complaint of continuing back pain. (TR 194).  No spinal x-rays appear in the record, and no further treatment for Plaintiff's complaint of back pain was noted.  It was again noted that Plaintiff's extremities exhibited no abnormalities. (TR 194).

The functional limitations in walking and standing included in Dr. Goddard's September 2005 office note were set forth only in the physician's first record of treatment of Plaintiff.  Thus, the notation was not that of a physician with a "longstanding treatment relationship" with the Plaintiff. Doyal, 331 F.3d at 762-763.  In Doyal, the Tenth Circuit Court of Appeals recognized that the opinions of physicians who have a "longstanding treatment relationship" with a claimant are entitled to greater weight because the physician's lengthy treatment record "provides some assurance that the opinion has been formed for purposes of treatment and not simply to facilitate the obtaining of benefits." Id.  By contrast, "[a] physician's opinion is ... not entitled to controlling weight on the basis of a fleeting relationship, or merely because the claimant designates the physician as her treating source." Id. at 763.  Dr. Goddard's notation of functional limitations in his September 2005 office note was not entitled to any special weight given the (1) absence of any indication that the notation reflected work-related limitations imposed on Plaintiff permanently or for any specific period of time and (2) the brevity of his treatment relationship with Plaintiff at that

time and over the course of the three month period that he treated Plaintiff. Consequently, the Appeals Council did not err in failing to expressly consider the notation as objective medical evidence of work-related exertional limitations placed on Plaintiff by a treating physician.

## V. RFC Finding - Step Four

Plaintiff contends (in Proposition I and Proposition II) that the ALJ's RFC finding is not supported by substantial evidence in the record and, hence, that the ALJ's step four determination is not supported by substantial evidence in the record. Plaintiff first contends that the RFC finding is deficient because there is "no physical RFC contained in this record." Plaintiff's Brief, at 7. However, the objective medical findings of the consultative examiner are consistent with and support the RFC determination that Plaintiff is capable of performing work at the medium exertional level. Medium work requires the ability to lift up to 50 pounds. 20 C.F.R. §§ 404.1567(c), 416.967(c)(2006). Plaintiff points only to the vague remarks made by Dr. Moody on the DHS form the physician completed in May 2004 and to the brief note of functional limitations set forth in Dr. Goddard's September 2005 office note. The undersigned previously found that the ALJ was not required to consider the DHS form completed by Dr. Moody in May 2005 or to give any special weight to the September 2005 office note prepared by Dr. Goddard. Because no error occurred with respect to the ALJ's evaluation of the DHS form or the September 2005 office note, the ALJ's failure to consider these documents in determining Plaintiff's RFC for work was not error.

Following the consultative examination of Plaintiff by Dr. Green, the psychologist

reported the results of intelligence testing of Plaintiff and recited Plaintiff's description of her usual daily activities (TR 129-131).  Following the consultative physical examination of Plaintiff by Dr. Langerman, the physician reported the objective medical findings with respect to Plaintiff's examination, including the absence of findings of restricted range of motion in her lumbar and cervical spines, the absence of neurological or sensory deficits, and the findings of normal grip strength, normal gait, and normal manipulative and heel and toe walking testing. (TR 134-140).  The ALJ relied on the findings of the consultative examiners and Plaintiff's own statements regarding her activities in determining that Plaintiff is capable of performing work at the medium exertional level with limitations involving the complexity of instructions and contact with the public related to Plaintiff's borderline intellectual functioning. The ALJ's RFC finding is well supported by substantial evidence in the record.

The ALJ did not err in relying on the testimony of the VE with respect to the exertional requirements of Plaintiff's past relevant work and Plaintiff's ability to perform her previous job, as this job is described in the Department of Labor's <u>Dictionary of Occupational Titles</u>, in view of her RFC for work.  (TR 225-229).  There is substantial evidence in the record to support the Commissioner's decision that Plaintiff is capable of performing her past relevant work as a fast food worker.  Thus, the Commissioner's decision that Plaintiff is not disabled within the meaning of the Social Security Act should be affirmed.

<u>RECOMMENDATION</u>

In view of the foregoing findings, it is recommended that judgment enter

AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for disability insurance and supplemental security income benefits.   The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____ November 6th , 2006, in accordance with 28 U.S.C. §636 and LCvR 72.1.   The parties are further advised that failure to file a timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656(10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this _____17th_____ day of ___October__, 2006.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE